## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | CRIMINAL NO. 09-0146-WS |
| | ) | |
| KIMBERLY NICHOLE RAINWATERS, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

The defendant is charged in a six-count second superseding indictment. (Doc. 29). The defendant waived trial by jury, (Docs. 41, 42, 49), and the matter came on for bench trial on March 25, 2010. Prior to trial, the parties presented briefs and stipulated facts in support of their respective positions. (Docs. 43-46).[1] The parties presented additional evidence and offered additional argument in open court on March 25. After carefully considering the foregoing, the Court enters the following findings of fact, conclusions of law and verdict.

## FINDINGS OF FACT[2]

In 1995, the defendant began receiving Social Security Administration ("SSA") childhood student benefits. In January 1996, when she turned 18, the defendant moved in with Jon Rainwaters ("Rainwaters") at his parents' residence. In July 1996, following the defendant's graduation from high school, she and Rainwaters moved into a residence of their own on family property. At all relevant times, both the defendant and Rainwaters were residents of Alabama.

---

[1]The Government presented proposed stipulated facts in 27 numbered paragraphs. (Doc. 44 at 2-12). The defendant stipulated to all of them except paragraphs 21-24. (Doc. 46 at 1-2). The defendant confirmed this stipulation on the record at the commencement of trial.

[2]The Court finds all facts listed herein beyond a reasonable doubt.

In January 1998, the defendant began receiving SSA adult child disability benefits. In the fall of 1998, the defendant became pregnant by Rainwaters. On Christmas Eve 1998, Rainwaters asked the defendant to marry him and gave her an engagement ring he had picked out and paid for ($2,000 or more). Both the defendant and Rainwaters wanted a ceremonial marriage, but they were concerned that the defendant would lose her SSA benefits if SSA learned they were married. Rainwaters added the defendant to his checking account.

In June 1999, the defendant and Rainwaters had their first child together. In February 2001, they had a second child together. Both children were given the surname Rainwaters.

In early 2001, the defendant and Rainwaters decided to have a ceremonial wedding but then decided not to risk losing the SSA check by doing so. Rainwaters assured the defendant she was his wife in every sense of the word and told her to change her name to Rainwaters. On March 30, 2001, the defendant completed a petition for name change with the Probate Court of Washington County, along with an information sheet on which she identified her marital status as single. On the same day, the probate judge entered a decree changing the defendant's last name from Brown to Rainwaters. On the same day, the defendant told Rainwaters her name was now legally Rainwaters, and he announced they would celebrate their honeymoon when he got home.

On March 30, 2001, the defendant immediately began introducing Rainwaters as her husband to everyone she met, and Rainwaters immediately began introducing the defendant as his wife to family, friends and colleagues, almost 100 specifically identified individuals. The defendant purchased two wedding bands for them, although Rainwaters did not wear his.

Rainwaters was born in 1974, the defendant in 1978. Neither was married to another, and neither was of unsound mind.

In October 2001, the defendant applied for and received a new social security card

in the last name of Rainwaters.  In 2002, the defendant obtained an Alabama driver's license using the surname Rainwaters.

The defendant and Rainwaters incurred debts together as man and wife. Rainwaters carried the defendant as an insured under his employer-provided health insurance policy, and he gave her an insurance card.  The defendant and Rainwaters went on various vacations together and with their children.

Rainwaters did not want the defendant to work before their children were in school.  Thus, and because of her physical condition, the defendant did not work, and Rainwaters was the primary breadwinner.  The defendant performed all child-rearing and household chores, including cooking, grocery shopping, washing, yard work, and Christmas shopping.  Rainwaters provided the defendant money (at one point, $350 a week) to pay household bills.  The defendant's SSA check was used to make payments on a car that Rainwaters purchased in his name.

The defendant and Rainwaters separated in January 2006.  They lived together continuously from January 1996 to January 2006 and had no sexual relations with anyone else during that period.

The defendant filed a divorce petition in March 2006, in which she alleged that she and Rainwaters became common-law husband and wife on or about December 24, 1998. On March 7, 2007, Judge Baxter conducted a hearing limited to the question whether the defendant and Rainwaters were married, either ceremonially or by common law.  On March 20, 2007, Judge Baxter issued an order finding, by a preponderance of the evidence, that the parties were married by common law.  In March 2008, Judge Baxter conducted a final divorce hearing, and in May 2008 he issued an order divorcing the defendant and Rainwaters.[3]

_____

[3]The defendant maintains that she and Rainwaters were divorced in March 2007 and that the May 2008 order was a petition for rule nisi based on Rainwaters' failure to pay child support as ordered in March 2007.  The evidence does not remotely support her position.  Judge Baxter expressly stated on the record at the March 2007 hearing that "the

The defendant and Rainwaters became common-law married on March 30, 2001. On that date, both had the capacity to be married and both manifested a present agreement and mutual assent to be married. On and after that date, the defendant and Rainwaters publicly recognized their marriage by telling many people they were married. Both before and after that date, the defendant and Rainwaters cohabited and mutually and openly assumed marital duties.

The defendant and Rainwaters remained married until the marriage was dissolved by divorce in May 2008.[4] The defendant knew at all times between March 30, 2001 and the May 2008 divorce that she was married to Rainwaters.

The defendant's expert witness agreed that, as a recipient of adult child disability benefits, the defendant had a legal obligation to report to SSA a common-law marriage. As established by the testimony of Blake Chavers and Government Exhibits 29, 30 and 32, in January 1998 the defendant received written notice of the SSA award. The notice

---

purpose of today's hearing is to make a determination as to whether or not these parties are married or not, and if so, if they are married by common law. ... I will consider what I have heard here today and making [sic] a ruling on that legal question, and set further hearings as those may be needed in the future, if at all." (Government Exhibit 9 at 85). His March 20 order identified "[t]he issue presented to the court at this [March 2007] hearing [a]s whether the couple is married by common law" and made the single finding that "the parties are married by common law." (Government Exhibit 10). Judge Baxter's May 2008 order is the first to address divorce, and it "ordered that the parties be and they are hereby forever divorced each from the other on grounds of incompatibility of temperament." (Government Exhibit 12 at 1).

[4]The defendant insists she could not have been common-law married because Rainwaters testified at the March 2007 hearing that he never intended to be married. At that point, Rainwaters had a substantial financial incentive to say he had never considered himself to be married, and the Court does not find his testimony to be credible. The defendant, in contrast, testified against her financial and penal interests (which she acknowledged on the stand) by insisting she and Rainwaters held themselves out as husband and wife both expressly and by their conduct, and the Court finds her testimony to be credible.

included the following language: "Other events you need to report are listed in the enclosed booklet. ... You must notify the [SSA] promptly when any one of these events occurs." The enclosed booklet repeated that "you must report to us" a number of events that could affect benefits, including "[i]f you get married or divorced." The defendant received this information and from January 1998 forward at all times knew she was legally obligated to inform SSA if she became married.

As discussed in the conclusions of law, the defendant's marriage cut off her entitlement to adult child disability benefits. The defendant's marriage was a fact material to SSA because it is capable of influencing, and has a natural tendency to influence, SSA's decision concerning the defendant's benefits. The defendant testified that, before changing her name to Rainwaters, she contacted SSA and was advised that merely changing her name would not cut off her benefits but that getting married would do so. At all times from March 30, 2001 forward, the defendant knew both that she was not entitled to continue receiving adult child disability benefits after becoming married and that, by not disclosing her marriage to SSA, she would receive greater benefits than she was entitled to receive.

Between March 30, 2001 and May 2008, the defendant received over $1,000 in adult child disability benefits. This money belonged to the United States. The defendant knowingly, wrongfully and willfully took this money with the intent to permanently deprive the United States of its use, she knew that her taking was wrongful, willful and with the intent to permanently deprive the United States of its use, and she received and retained the money with the intent to convert it to her own use.

In connection with the defendant's October 2001 application for a social security card in the name of Rainwaters, SSA asked her to state why she had changed her name and, if the change was due to marriage, to state the date of this event. On or about January 26, 2002, the defendant responded as follows: "Because I have 2 children and their last name is Rainwaters, therefore I changed my name for their benefit in the future."

The defendant did not state that her name change was due to marriage and did not give a date of her marriage.

On or about September 13, 2005, during a visit to the SSA office in Jackson, Alabama, SSA employee Aaron Ott asked the defendant about her name change and marital status. The defendant told Ott that, although her name had been legally changed, she was not currently married.

On or about July 24, 2008, as part of an investigation into an allegation of fraud by the defendant, SSA employee Julie Whatley called the defendant. The defendant stated she had never been married and never been divorced. She also stated she had changed her last name to Rainwaters because she wanted to have her children's last name.[5]

The defendant's statements on or about January 26, 2002, September 13, 2005, and July 24, 2008 related to matters within SSA's jurisdiction, and they were material to SSA's determination of the defendant's continued entitlement to benefits. The statements were false, and the defendant at the time of making them knew them to be false. In making them, the defendant acted willfully and intended to deceive or mislead SSA. The defendant's conduct constitutes affirmative concealment of her marriage from SSA.

**CONCLUSIONS OF LAW**

Alabama law governs the inquiry whether the defendant and Rainwaters entered a common-law marriage. The parties agree. (Doc. 43 at 3; Doc. 44 at 12; Doc. 46 at 2-3).

"The elements of a common-law marriage are: (1) capacity; (2) present agreement or mutual consent to enter into the marriage relationship ...; (3) public recognition of the existence of the marriage; and (4) cohabitation or mutual assumption openly of marital duties and obligations." *Creel v. Creel*, 763 So. 2d 943, 946 (Ala. 2000) (internal quotes

---

[5]The defendant refused to stipulate to these facts, but she presented no evidence concerning them. The government, in contrast, presented Whatley's testimony at trial, which was consistent with her recorded statement.

omitted); *accord Arnold v. Arnold*, 977 So. 2d 501, 508 (Ala. Civ. App. 2007). Each of these elements may be "either explicitly expressed or implicitly inferred from the circumstances." *Id*. "Whether the essential elements of a common-law marriage exist is a question of fact." *Gray v. Bush*, 835 So. 2d 192, 194 (Ala. Civ. App. 2001).

The defendant and Rainwaters were both over the age of 21 in March 2001. Neither was married to another, of unsound mind, or otherwise legally incapacitated from entering a valid marriage in March 2001. *See Adams v. Boan*, 559 So. 2d 1084, 1086-87 (Ala. 1990) (both partners must be of legal age to contract a common-law marriage);[6] *Hall v. Duster*, 727 So. 2d 834, 836 (Ala. Civ. App. 1999) (pre-existing marriage to another prevents a common-law marriage); *Beck v. Beck*, 246 So. 2d 420, 425 (Ala. 1971) (a common-law marriage is invalid if either of the parties is of unsound mind). The defendant does not dispute that the parties had the capacity to enter into marriage.

"In all cases then, the question is whether the evidence discloses facts manifesting a mutual intention by the parties to be man and wife. This manifestation must show present intention, not an intention to marry in the future." *Piel v. Brown*, 361 So. 2d 90, 94 (Ala. 1978). Because an engagement connotes an intention to marry in the future, not an intention to marry presently, the Court rejects the government's argument that the defendant and Rainwaters married in December 1998. However, the Court finds that the defendant and Rainwaters manifested a mutual, present intention to marry on March 30, 2001. At that time, the couple wanted to marry ceremonially but were concerned about losing the SSA benefits. Rainwaters told the plaintiff she was his wife in every sense of the word and told her to change her name to Rainwaters. On the day she did so, he announced they would celebrate their honeymoon that day. On the same day, the defendant and Rainwaters began calling each other husband and wife. There is no question but that they manifested a mutual, present intention to marry on March 30, 2001.

---

[6]In 2001, the legal age for contracting marriage was 14 years. Ala. Code § 30-1-4. Parental consent was not required for persons aged 18 and over. *Id*. § 30-1-5.

The public recognition and mutual assumption elements are often considered together. *See, e.g., Adams v. Boan*, 559 So. 2d at 1086, 1088. Cohabitation and sexual relationship are indicia of a common-law marriage, as are the couple's sharing of household duties, sharing of household expenses, maintaining joint accounts, using the same surname, referring to each other as a spouse, introducing each other as a spouse, listing themselves as married on documents, and rearing children together. *Buford v. Buford*, 874 So. 2d 562, 566 (Ala. Civ. App. 2003). All but one of these indicia are present here, and as to it Rainwaters placed the defendant on his health insurance, whether or not the paperwork to accomplish this expressly noted the two as married. There is no question but that the defendant and Rainwaters mutually and openly assumed marital duties and obligations and verbally and otherwise advertised their marital status, gaining public recognition of their marriage.

The defendant suggests that SSA is required to base a determination of common-law marriage on signed statements of both partners confirming the existence of such a marriage. As the submitted SSA materials make plain, there is no such requirement. At any rate, for purposes of the present prosecution the issue is whether the defendant and Rainwaters were married under Alabama law, not whether SSA would have found them to be married under its internal procedures.

The defendant stresses that Judge Baxter's finding of a common-law marriage was made by a preponderance of the evidence and so is not controlling here. Quite so, but the Court bases its finding of a common-law marriage on its independent findings on the evidence presented, not in whole or in part on Judge Baxter's ruling.

The defendant affirmatively insisted in her testimony before Judge Baxter that she knew she was married, and she repeated that insistence in her interrogatory responses. Despite this unequivocal evidence, in brief she argues she could not have "known" she was married until Judge Baxter so ruled in March 2007, and that until then she merely "believed" she was married. This is a bit like saying that a defendant with a bale of what

looks, feels and smells like marijuana, and who correctly understands it to be marijuana, merely "believes" it to be marijuana but cannot "know" it is marijuana until and unless he has it chemically tested. Whether or not the defendant appreciated the legal test for a common-law marriage, and whether or not she applied it properly — or at all — to her situation, she drew the correct conclusion that she was married, and she did not doubt the correctness of her conclusion. She therefore possessed knowledge she was married, as she admits in her testimony.[7]

## I. Count One.

Count One of the second superseding indictment charges that the defendant, from in or about December 1998 to in or about November 2008, received, concealed and retained, with intent to convert to her own use and gain, monies of the United States of a value exceeding $1,000 (namely, SSA adult child disability benefits), knowing the money to have been embezzled, stolen, purloined and converted, in violation of 18 U.S.C. § 641.

The defendant can be convicted under Count One only if each of the following is established beyond a reasonable doubt:

- that the money described in the indictment belonged to the United States;
- that the money had been embezzled, stolen, purloined or knowingly converted without authority to the use of another;
- that the defendant received, concealed or retained the money with the intent to convert it to her own use;
- that the defendant knew the money had been embezzled, stolen, purloined or converted;

---

[7]Even were the defendant's argument plausible, Judge Baxter's ruling removed any metaphysical doubt she could have entertained as to whether she was married, as she admits. (Doc. 43 at 4). The undeniable knowledge imparted to the defendant by that ruling alone would extend to all counts of the second superseding indictment except Four and Five.

- that the defendant acted knowingly and willfully with intent to deprive the owner of the use or benefit of the money so taken; and

- that the money had a value in excess of $1,000.

Eleventh Circuit Pattern Jury Instructions (Criminal), Offense Instruction No. 21 (2003) ("Pattern").

To embezzle means the wrongful or willful taking of money of someone else after the money has lawfully come within the possession or control of the person taking it. To steal or convert means the wrongful or willful taking of money belonging to someone else with intent to deprive the owner of its use or benefit either temporarily or permanently. Pattern, Offense Instruction 21.

To act knowingly means that the act was done voluntarily and intentionally and not because of mistake or accident. To act willfully means that the act was committed voluntarily and purposely, with the specific intent to do something the law forbids; that is, with a bad purpose either to disobey or to disregard the law. Pattern, Basic Instruction 9.1.

Marriage cuts off a recipient's entitlement to adult child disability benefits. 42 U.S.C. § 402(d)(1)(B)(ii), (D), (E)(i). (Government Exhibit 17 at 1; Government Exhibit 19 at 1). Once the defendant married Rainwaters on March 30, 2001, she was no longer legally entitled to receive these benefits, and she knew both that she was married and that she was therefore not entitled to receive the benefits. The money she received and retained thereafter belonged to the United States and exceeded $1,000. Her receipt and retention of the benefits with this knowledge amounted to an embezzlement, theft and/or conversion for purposes of Section 641. The defendant knew the money had been embezzled, stolen and/or converted, she received and retained it with the intent to convert it to her own use, and she acted knowingly and willfully with the intent to deprive the United States of the use and benefit of the money. The Court finds that all elements of an offense under Section 641 have been established beyond a reasonable doubt.

## II. Count Two.

Count Two charges that the defendant, from in or about December 1998 to in or about November 2008, and having knowledge of the occurrence of an event affecting her continued right to adult child disability benefits (namely, her common-law marriage), concealed and failed to disclose such event with the intent to fraudulently secure payment when no payment was authorized, in violation of 42 U.S.C. § 408(a)(4).

The defendant can be convicted under Count Two only if each of the following is established beyond a reasonable doubt:

- that the defendant knew of the occurrence of an event;
- that the event affected her continued right to payment of Social Security benefits;
- that she concealed or failed to disclose the event; and
- that she had an intent to fraudulently secure payment in a greater amount than was due or when no payment was due.

*United States v. Youngblood*, 263 Fed. Appx. 829, 831 (11th Cir. 2008).

In order to establish an intent to fraudulently secure payment not due or payment in a greater amount than due, the government must show: (1) "that the defendant knew that [s]he was legally obligated to disclose certain information"; and (2) "that the defendant knew that by withholding the information [s]he would receive greater payments than [s]he was entitled to." *United States v. Phillips*, 600 F.2d 535, 536 (5th Cir. 1979).

As a matter of law, the defendant's common-law marriage affected her right to payment of SSA benefits. As of March 30, 2001, the defendant was married and knew she was married. The defendant thereafter failed to disclose her marriage to SSA and concealed her marriage from SSA. The defendant knew that she was legally obligated to disclose her marriage to SSA and that, by withholding from SSA the information that she was married, she would receive greater payments than she was entitled to. The Court finds that all elements of an offense under Section 408(d) have been established beyond a

reasonable doubt.

## III. Count Three.

Count Three charges that the defendant, from in or about December 1998 to in or about November 2008, in a matter within the jurisdiction of the SSA, knowingly and willfully falsified, concealed and covered up by trick, scheme and device a material fact, in that she did not disclose her common-law marriage, in violation of 18 U.S.C. § 1001(a)(1).

The defendant can be convicted under Count Three only if each of the following is established beyond a reasonable doubt:

- that the defendant falsified, concealed or covered up a material fact;
- that the defendant did so by use of a trick, scheme or device;
- that the material fact was in a matter within the jurisdiction of the executive branch of the government; and
- that the defendant acted knowingly and willfully.

Pattern, Offense Instruction 36.

A fact is material if it has a natural tendency to affect or influence, or is capable of affecting or influencing, the exercise of a government function. Pattern, Offense Instruction 36.

Simply failing to disclose a material fact does not satisfy Section 1001(a)(1); affirmative conduct to falsify, conceal or cover up is required. *United States v. Rigdon*, 874 F.2d 774, 779 (11th Cir. 1989).

The defendant's marriage was a material fact, and it concerned a matter within SSA's jurisdiction. The government has not addressed Count Three directly, and it has identified only four instances of affirmative conduct on which a conviction could be based. The earliest of these is the defendant's statement to the probate judge, just before having her name changed, that she was single. The government, however, failed to

establish beyond a reasonable doubt that the defendant was not single when she made that statement.[8]

Conviction under Count Three could therefore be based only on the defendant's statements on or about January 26, 2002, September 13, 2005, and July 24, 2008. These episodes are the subject of Counts Four, Five and Six, which are brought under 18 U.S.C. § 1001(a)(2) and (a)(3). Subsection (a)(2) addresses false statements, and subsection (a)(3) addresses false written statements. The government has not explained how, when prosecution under subsection (a)(1) is based exclusively on specific oral and written statements being prosecuted under subsections (a)(2) and (a)(3), prosecution under subsection (a)(1) is not barred by the Double Jeopardy Clause.[9] The Court will not endeavor unilaterally to salvage this count.

## IV. Count Four.

Count Four charges that the defendant, on or about January 26, 2002, and in a matter within the jurisdiction of the SSA, knowingly and willfully made and used a false writing or document knowing the same to contain a materially false, fictitious and fraudulent statement or entry, in violation of 18 U.S.C. § 1001(a)(3).[10]

The defendant can be convicted under Count Four only if each of the following is

---

[8]The Court has found beyond a reasonable doubt that the defendant became married later the same day, when her name was changed, Rainwaters stated they would celebrate their honeymoon that night, and the couple began telling each other and third parties they were husband and wife.

[9]*See generally United States v. Dixon*, 509 U.S. 688, 696 (1993) (unless "each offense contains an element not contained in the other ..., they are the 'same offense' and double jeopardy bars additional punishment and successive prosecution").

[10]Count Four also charges that the defendant's conduct violated subsection (a)(2). Because the government has not explained how conviction under both subsections for the same conduct would not violate the Double Jeopardy Clause, the Court rejects Count Four to the extent based on subsection (a)(2).

established beyond a reasonable doubt:

- that the defendant made or used the writing or document;
- that the writing or document contained a false statement;
- that the falsity related to a material matter;
- that the defendant acted willfully and with knowledge of the falsity; and
- that the writing or document was made or used in relation to a matter within the jurisdiction of a department or agency of the United States.

Pattern, Offense Instruction 36.

To be false, there must be an intent to deceive or mislead. *United States v. Boffil-Rivera*, 2010 WL 22104253 at *3 (11th Cir. 2010).

On or about January 26, 2002, the defendant used a writing to make the false statement to SSA that the reason she changed her name to Rainwaters was to share her children's name for their future benefit, when the real reason she changed her name was to signify her marriage to Rainwaters. The defendant made this false statement willfully, with knowledge that the statement was false, and with intent to deceive or mislead. The writing was used in relation to a matter within SSA's jurisdiction (obtaining a new social security card), and it concerned a material matter because information concerning the defendant's marriage has a tendency to influence SSA's decisions concerning the defendant's adult child disability benefits. The Court finds that all elements of an offense under Section 1001(a)(3) have been established beyond a reasonable doubt.

## V. Count Five.

Count Five charges that the defendant, on or about September 13, 2005 and in a matter within the jurisdiction of the SSA, knowingly and willfully made, and caused to be made, a false, fictitious and fraudulent statement and representation of material fact, in violation of 18 U.S.C. § 1001(a)(2).

The defendant can be convicted under Count Five only if each of the following is

established beyond a reasonable doubt:

- that the defendant made the statement;

- that the statement was false;

- that the falsity related to a material matter;

- that the defendant acted willfully and with knowledge of the falsity; and

- that the false statement was made in relation to a matter within the jurisdiction of a department or agency of the United States.

Pattern, Offense Instruction 36.

To be false, there must be an intent to deceive or mislead. *Boffil-Rivera*, 2010 WL 22104253 at *3.

On or about September 13, 2005, the defendant made the false statement to SSA that she was not currently married, when she was in fact married. The defendant made this false statement willfully, with knowledge that the statement was false, and with intent to deceive or mislead. The statement was made in relation to a matter within SSA's jurisdiction, and it concerned a material matter. The Court finds that all elements of an offense under Section 1001(a)(2) have been established beyond a reasonable doubt.

## VI. Count Six.

Count Six charges that the defendant, on or about July 8, 2008 and in a matter within the jurisdiction of the SSA, knowingly and willfully made, and caused to be made, a false, fictitious and fraudulent statement and representation of material fact, in violation of 18 U.S.C. § 1001(a)(2). The elements necessary for a conviction under Count Six are the same as for Count Five.

On or about July 24, 2008, the defendant made the false statement to SSA that she had never been married and had never been divorced, when in fact she had been both married and divorced. The defendant made this false statement willfully, with knowledge that the statement was false, and with intent to deceive or mislead. The statement was

-15-

made in relation to a matter within SSA's jurisdiction, and it concerned a material matter. The Court finds that all elements of an offense under Section 1001(a)(2) have been established beyond a reasonable doubt.

## VERDICT

For the reasons set forth above, the Court finds the defendant **guilty** as charged in Counts One, Two, Four, Five and Six of the second superseding indictment.  Count Three of the second superseding indictment is **dismissed**.

The defendant will be sentenced by the undersigned on **Thursday, September 9, 2010** at **9:30 a.m.**   The presentence investigation report shall be completed by U.S. Probation and disclosed to the parties on or before **August 5, 2010**.  On or before **August 26, 2010**, the parties shall each file a "Position of (United States) (Defendant) with Respect to Sentencing Factors" in accordance with this Court's Standing Order Number 5.  All other requirements and deadlines of that Standing Order shall be strictly observed and enforced.

DONE and ORDERED this 9th day of June, 2010.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE